Miller v. GreenLeaf Orthopedic Associates. Mr. Robbins. Good morning. May it please the court, I'm Michael Robbins. I represent the GreenLeaf Orthopedic Association. The plaintiff, Venita Miller, told the defendant's decision maker, Linda Miller, about Venita Miller's whereabouts on the week of September 14, 2009. The jurors almost without question decided the credibility of these two individuals, the plaintiff and the decision maker, defendant's decision maker, as well as the reason, specific reason for the firing based on what was said during a conversation on September 14, 2009 at about 4 o'clock. Either the plaintiff lied to her manager and said she was in fact at jury duty when she wasn't, jury duty in this building, in an effort to steal some benefits from her employer, or she truthfully told Linda Miller, the manager, that she had called in sick to jury duty, had left multiple messages with her employer calling in sick, and asked if the employer, which is a doctor's orthopedic practice, would write a note for her. It is impossible to overstate the importance and significance of this particular factual issue. Also important in the context of this is that the defendant admitted that the plaintiff was not under consideration for termination prior to the plaintiff having told the defendant that she, the plaintiff, was diagnosed with a mass on her pancreas the week before and was suspected of possibly having pancreatic cancer. The plaintiff maintained a diary, a contemporaneously written diary, and there are two entries in the diary which were of critical importance in this case. The September 14th diary, which documented a conversation between the plaintiff and the manager that Monday afternoon, and the following day, the during the course of discovery, Greenleaf said, and the manager testified, that what happened was she couldn't recall speaking to Vanita Miller on September 14th. Her recollection was she didn't think she spoke to her, but if they did have a conversation, it was only with respect to Vanita Miller, the plaintiff, picking up a check, arranging to pick up a And she went on to say that she assumed the plaintiff was at jury duty. And when the plaintiff was seen driving around that following Friday and they called and found out she was not at jury duty, they fired the plaintiff for no call, no show. And she denied ever talking to her on the 15th the next day and giving her a few days off. Then they came with a motion to eliminate and barred, and the judge granted it, and barred the contemporaneous diary entries, which documented what was actually said, documented by the plaintiff in her handwritten diary, documented what was said, documented a week before she was fired, before she had any reason to think there would be any case or have any cause of action. And it indicated in the diary in the September 14th entry, which was never admitted into evidence, she said, called in sick, work in jury duty, and then beyond that said called Linda, Linda's the manager, said she got my message. I remind her I had JD this week. She said our docs wouldn't write an excuse for me. Hopefully my ER papers will be enough. And then there's the 15th, the other entry, called in sick today, asked Linda if Dwight could pick up my check instead of mom. She said okay, we'll leave at the front desk. Also okay to have a few days off. I told her where I'd be for coverage. She said that's fine. Now the September 15th entry, the one I just read, as a result of multiple motions for reconsideration, we were allowed to produce that, but only briefly in rebuttal and not during the course of our case in chief. And when you asked to publish it, there was an objection. The judge overruled the objection, but suggested oral testimony was better and you said okay. So the ruling did go in your favor. I mean, you got it in. Well, it was, there was testimony about it. We were not allowed to show it to the jury. And ultimately what happened is, I think it was greatly to our detriment, because what happened is the jury was informed there was a diary. And so they did see, or didn't see it, but they heard about this September 15th out of context in rebuttal only. So they knew there was a diary, but weren't told anything about a diary documenting the key conversation. When you said okay that the court would let the testimony come in orally, were you agreeing to that? Did you still object because of all the other objections you had made? I was acquiescing to the court. The court said she can say something about it, you can't show it to them. Ironically, there was even an issue that came up where the doctor said that her handwriting was so bad that he couldn't read her messages. So she was a receptionist at this practice for three years and apparently had illegible handwriting and that surfaced at the trial. So in terms of an ancillary issue, we thought the jury should be able to see her handwriting, which is legible. But the key thing is, the jury then learned there was this diary, but they heard nothing about a September 14th diary. And then what happened at trial is Linda Miller changed her testimony. She went from, I don't think I spoke to her, but if I did, it was only about a check. She changed it to, oh yes, we did speak. And she told me she was at jury duty. And then she went on to say, so when we saw her driving around, found out she had not been at jury duty that week, we knew she had lied. So she went from a no call, no show, and then they turned around this grant of a motion to eliminate and turned her from a shield into a sword and changed her entire defense during trial. And she changed her testimony from, I don't think I spoke to her, and if I did, it was only about the check, to yes, I spoke to her. She told me she was at jury duty. And she lied. Right. Counsel, could I ask you, I always thought that one of the purposes of a diary is to reflect on the day's events. Would you agree with that? I think there's many purposes for a diary. I don't keep a diary, so I certainly think it is one of reflection, but I think it also tends to track events. And this was a diary... My problem is with your present sense impression argument, which I find pretty hard to satisfy with a diary that's going to be prepared at least hours later with the benefit of memory, reflection, etc. And I really don't see how that satisfies our gloss on the rule in Boyce and Woods saying there's no opportunity for reflection, calculated narration. I think the testimony was, or the indication was, that it was substantially contemporaneous. The judge found... What does that mean? Well, I think same day. I don't think there's a time frame specifically. I think the judge, in his ruling keeping it out, held that it was contemporaneous. I don't think there was any dispute about that. But we think certainly it is a prior consistent statement and not hearsay and admissible as substantive evidence. And that really is your stronger argument. By far. Absolutely. She testified. It's consistent with what she said. And it should be admissible to rebut and express her implied charge that the declarant recently fabricated it or, and falsified. So they changed at trial, changed their defense, changed the reason they terminated her, changed their testimony regarding what happened in this conversation, and made her a liar. And then you have this prior consistent statement written at the time, contemporaneous, without any motive to falsify. And we were barred from offering it to the jury. So the jurors were left to find out, to figure out who was telling the truth in a vacuum. And it greatly undermined our case. All right. Thank you, Mr. Robbins. Ms. Weiler. Good morning, Your Honors. May it please the Court, Catherine Weiler on behalf of Greenleaf Orthopedic. Plaintiff Linda Miller seeks a new trial because she argues, vociferously, she was not allowed to present evidence of a diary entry which she insists would have corroborated her trial testimony. And because another diary entry, which was given, which she read to the jury, which she testified to, may somehow have changed the jury's impression of her testimony in this case. But that context is the key to understanding the issue on appeal in this case. The plaintiff was allowed to testify to all of these matters. The plaintiff was allowed to tell her story. Right, but she had the diary, which she at least testified that she made these notations on the days in question, and particularly with the whole issue of her being spotted when she was supposed to be on jury duty, the diary was consistent with what she had said. And why isn't that recent fabrication? It shouldn't be used under that rule. Because Judge, the language in the specific diary entry at issue, so this is the September 14th diary entry, is entirely consistent, can be read in a manner entirely consistent with the plaintiff's story, and also in a manner entirely consistent with the way in which Linda Miller testified, the office manager. Exactly, so why couldn't it come in and then it could be argued, you know, you could put your spin on it before the jury, but certainly it showed, I mean, the whole issue was this, you know, what were the conversations, it was all a he said, she said, or she said, she said kind of scenario. First of all, Judge, it wasn't only she said, she said. There was ample evidence that Greenleaf had ongoing performance issue concerns related to the plaintiff, and that this particular incident where plaintiff was a no-call, no-show was the, as they said, the straw that broke the camel's back. But to directly answer the court's question, the distinction here is that the plaintiff already had the opportunity and took the opportunity to testify about exactly what these conversations were, and this evidence, to the extent that it should have been admissible, which under the rules, and as Justice Hamilton said, it's not a present sense impression, it's certainly not a prior consistent statement, because it's too ambiguous. This particular statement- Well, that's your view of it, that it's too ambiguous, but it could be read more favorably toward her. It could be, and it could be read more- And there is a difference from someone just testifying and saying this, and then actually the jury seeing that those words have been put in writing on a piece in the diary. Except that these words do not corroborate the plaintiff's testimony. It's too ambiguous to corroborate that testimony. From your point of view. Correct, Your Honor, and also from the district court's point of view. Oh, I understand the district court did it. I mean, the district court fought your theory. The district court agreed that the language was too ambiguous, and that finding was not an abuse of discretion. When you look at the specific language in this diary entry, called in sick today, work and jury duty, and then the plaintiff adds, called Linda, she got my message, I reminded her I had jury duty this week, she said our docs wouldn't write an excuse for me, hopefully my ER papers will be enough. What the plaintiff is arguing these words say is, I, Vanita Miller, told the office manager, Linda Miller, that I was too ill to go to jury duty and I was too ill to come to work and I needed some time off. That is not what this diary entry says. And that's not what Ms. Miller, what Linda Miller testified. Linda Miller testified, I spoke with the plaintiff, she told me that she wanted an excuse from our doctors for jury duty, I told her that I wasn't going to give her an excuse. And there was also some discussion about an advance on her vacation pay. That's what Linda Miller testified the conversation was about. Vanita Miller testified to the contrary. She said, no, I specifically informed the office manager that I was too ill to go to jury duty, that I was too ill to come to work. Point being, that testimony went directly to the jury. The jury had the opportunity to hear that. And the district court properly concluded that this diary entry, because it was ambiguous and could be read either way, was not properly admissible. It wasn't admissible under Rule 403 because it was cumulative evidence. And it wasn't Can I ask you this? So is it your position 801 D1B requires that the prior statement be consistent with her testimony? I understand the testimony was inconsistent with her employer. Not that, it is not our position that it needs to be consistent with all of the testimony given at trial. But it is our position that the testimony needs to be consistent with the party offering that testimony, with the party arguing that this is an exception to the hearsay rule. Certainly, it is partially consistent when she talks about how sick she was and that she couldn't come into work. There's no mention of the jury duty, I don't think, let me pull a note, I have a note here. Well she reminded her that she had jury duty this week. That's correct and that is a fundamental distinction, Your Honor. This isn't a case where the diary entry states, I told Linda Miller I was sick and I was too sick to go to jury duty. What the diary entry states is, I reminded her I have jury duty this week. And again, that's consistent with what Linda Miller testified to and it also can be read as consistent with what the plaintiff testified to. The jury had all of those facts and the jury had the opportunity to weigh that testimony and ultimately make a credibility determination about which witness's story the jury believed. And the jury did make that determination. The jury didn't agree with Vanita Miller's position and it's understandable when you look at the facts more broadly as they were developed over the course of the trial. This isn't a case that was exclusively about whether or not Vanita Miller called Linda Miller on September 14th. There was ample evidence at trial about a variety of performance issues related to Vanita Miller. There was ample evidence presented at trial about the alleged discussions or about both sides' explanation of the discussions which occurred on September 15th, the following day. Of course, this is the event. This is the week where things came to a head and she was fired. That's correct, Your Honor. I mean, that was the most critical incidence or time sequence in all the other drama that took place between the plaintiff and Greenlee. Well, the other facts are fundamental because this isn't, as has been suggested, a case where the only thing that happened that was different from, say, for example, from before the time that the plaintiff got her diagnosis and advised her employer until after, the only distinction was this particular incident. There were a variety of issues that had come up and that is why she ultimately was terminated. But in addition to that, the incident, or excuse me, the facts of September 15th, the plaintiff's case, and she was allowed to develop more completely exactly what she contended occurred on September 15th. Right. But the diary would have shown what she had written on that day. She testified. She testified to it. And you know, and the jury was aware there was a diary. Correct. I'm sorry, Judge. I'm not trying to... No, no, no. I'm just saying the jury knew there was a diary. The jury... The jury would think that the jury would be curious about why the diary wasn't being shown if it's her diary and would it reflect what she actually said when credibility was such an issue? The jury was, Vanita Miller read directly to the jury the exact language, the exact diary entry from September 15th. That diary entry, in fact, does contradict directly the testimony that was given by Linda Miller. So in that situation, you do have language in the diary, which is directly contrary to other testimony which was presented at trial, and the plaintiff had the opportunity to testify about that language, to say, there was a diary, here's what my diary entry stated. It stated that I spoke with Linda Miller and that I told her that I was not going to jury duty. She was given that opportunity and she informed the jury of that. That is totally different from the September 14th diary entry, which was not given to the jury. The September 14th diary entry does not include language which directly contradicted Linda Miller's testimony. That's why it was an appropriate exercise of the court's discretion to not allow that into evidence. In addition to that, it's important for the court to remember that any error in this case is necessarily harmless. It's necessarily harmless for the reasons I've already discussed, because there was ample evidence in this case that supported Greenleaf's decision to terminate the plaintiff's employment, and because the plaintiff was given the- Counsel, weren't there some pretty serious credibility issues on your side of the case given the changes in Linda Miller's testimony? That's not correct, Your Honor, for two reasons. One is the testimony that was given at trial was not as inconsistent as has been suggested today. The testimony in deposition was Ms. Miller didn't specifically recall what occurred during this September 14th conversation. The testimony at trial, I see that my time is up, if I may finish. You may complete your thought. The testimony that was given at trial was that Ms. Miller, Linda Miller, after going back through the records, after trying to recall exactly what happened, she did have a recollection of the context of that conversation, the September 14th conversation, and she testified about it. That's issue number one with Ms. Miller's testimony. Issue number two is the plaintiff was given the opportunity to- Let's go back to that. That's a pretty big issue, that now she recalls what is, quote, the most critical conversation. And I understand witnesses do after they review material and everything. It helps them to remember things. But clearly, her credibility was squarely on front street. I mean, that was really, whether they bought her, that all of that caused her to recall, or was she actually fabricating? That's correct, and that actually is exactly my second point to Judge Hamilton, Your Honor, it relates to that. The plaintiff's counsel was given the opportunity to repeatedly examine Ms. Miller specifically about that point. She was recalled so that could be addressed. And that- So, I mean, it just shows how critical that testimony was. I mean, the fact that he was able to examine her, and specifically on that area, I mean, that's just the way it goes. I mean, that's important, that was fair, that he'd be given that opportunity. Exactly. So that wasn't anything special. And the point is, Your Honor, that he was given that opportunity. I agree that it's not special. Right, but all I'm saying is credibility was the big issue in this case. Who believed? Correct. And the jury made a determination about that credibility, and on that basis, the trial court's decision should be affirmed. If there are no further questions. Thank you. Thank you, Ms. Miller. Mr. Robbins? I take issue with that characterization of the record. I took the depositions, I tried the case. At the deposition, Linda Miller was asked if she spoke to Vanita Miller on September 14th. She said, I don't believe I spoke to her. If I did speak to her, it was with regards to that check. That's her deposition testimony. At trial, I said to her, so when you talk to her in this 6 minute, 31 second call at 409 in the afternoon, there was no discussion whatsoever about jury duty. This is on September 14th. Answer. She said she couldn't pick up the check because she was at jury duty. Could her mother pick up the check? So she told you she was at jury duty that week? Yes. That's why she couldn't come get the check. That's when we found out what the defense was, after the motion to eliminate was granted. And there can be no greater mischaracterization than to suggest that the diary is not inconsistent with Linda Miller's testimony. Linda Miller testified that Vanita Miller, the plaintiff. It doesn't come in because it's inconsistent with Linda Miller's testimony. It comes in because it's consistent with Vanita Miller's testimony. Absolutely. It is a prior consistent statement. If at all. Go ahead. Right. Because the plaintiff's credibility was at issue. She was accused of basically committing fraud. But what you just heard from the appellee is that the jury, the September 14th diary is consistent with Linda Miller's testimony. That's absurd. She testified, Linda Miller testified, she was told by the plaintiff at trial that the plaintiff was at jury duty. And the diary entry says, called in sick today, work and jury duty. And it goes on to say, called Linda, said she got my message. I reminded her I had jury duty this week. She said our docs wouldn't write an excuse for me. Well, I think there's also a second sentence in there. Thank God for, thank you God for letting jury duty understand and believe me. That's correct. That's correct. And so there's nothing in the little lower down in the message where she says, I reminded her I had jury duty this week. And she doesn't tell her that she called in, but to the, but there's some corroboration for what she said in those first two sentences. And here's the corroboration, your honor. Because on cross-examination, well, on adverse direct, I asked Linda Miller when I found out that she was now saying that the plaintiff had told her she was at jury duty, I said to her, isn't it a fact when she spoke to you person to person in that, in the afternoon on the telephone, she told you that she was not at jury duty. She needed records for jury duty, asked you if one of the doctors at Greenleaf would write a note for her. Isn't that a fact? And she said, no. So this is particularly relevant that she put in her diary entry, docs wouldn't write an excuse for me, because that's what she testified to. I called Linda Miller, I said, I'm sick. As I've left messages for you in the morning, have you gotten my message? Yeah, I got it. Okay, I'm sick and I need a note for jury duty. Would one of the doctors write me a note? And she testified that Linda Miller said no. That's what she put in her diary entry. Her contemporaneous, relatively contemporaneous diary entry. And that's what Linda Miller denied. And then, so there's no evidence about the 14th. That's the seminal fact at issue here. That's the key conversation. And the jury unfortunately found out that there was a diary, heard nothing about the entry on the 14th. Thank you. We would ask for a fair trial. Thank you, Mr. Robinson. Thank you, Ms. Roberts. The case is taken under advisement.